UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED

2012 SEP 19 P 1:15

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. No. |
| | ) | |
| | ) | In violation of: |
| vs. | ) | |
| | ) | Counts 1 and 2: 18 U.S.C. § 666 |
| | ) | (Federal Program Fraud) |
| | ) | |
| CHARLES D. MOREAU, | ) | CR12   129-01 M |
| and | ) | |
| | ) | |
| MICHAEL G. BOUTHILLETTE | ) | |

## INFORMATION

The United States Attorney charges:

### INTRODUCTION

At all times relevant to this Information:

1. From January of 2004 to the present, defendant CHARLES D. MOREAU ("MOREAU") was the elected Mayor of the city of Central Falls. For each fiscal year from July 1, 2007 through June 30, 2011, Central Falls received program benefits from the United States in a value greater than $10,000. In fact, during each of these fiscal years, Central Falls received several millions of dollars from federal grants, contracts, and other forms of federal assistance.

2. Defendant MICHAEL G. BOUTHILLETTE ("BOUTHILLETTE") is a businessman engaged in maintenance work, post-disaster cleanup

and restoration, and janitorial work. He was a longtime personal friend and a political contributor of MOREAU's. BOUTHILLETTE pursued his business interests by operating at least three businesses: (1) Intercity Maintenance, Inc. ("Intercity"); (2) Certified Disaster Restoration Corp. ("Certified Disaster"); and (3) Certified Facility Solutions Corp. ("Certified Facility"). All three of these businesses were Rhode Island corporations owned and operated by BOUTHILLETTE.

3. Beginning in September of 2007, there was a large increase in the number of vacant homes in the city due to foreclosures. MOREAU directed that vacated homes be boarded up. He further directed that all boardup work be done by his friend BOUTHILLETTE, announcing at a January 2008 staff meeting that "I have a friend who will do the boardups."

4. MOREAU circumvented the State requirement that such work go out for competitive bidding by declaring that each vacant home presented an "emergency" necessitating an immediate boardup. To maximize the number of homes being boarded up by BOUTHILLETTE, MOREAU directed city housing officials to identify vacant homes. When MOREAU personally observed a vacant home, he would direct housing officials to get it boarded up. Based on MOREAU's directives, the time given to property owners to board up their homes was reduced from seven days to 24 hours, which

also served to maximize the number of homes being boarded up. Due to this rush to have BOUTHILLETTE board homes as quickly as possible, there were occasions when homes were boarded up although tenants were still living there. Additionally, there were occasions when homes were re-boarded by BOUTHILLETTE at MOREAU's direction even though the owners of those properties had already had the houses boarded up by other companies.

    5. Pursuant to this arrangement, BOUTHILLETTE boarded up scores of homes. From approximately September 2007 to July 2009, he boarded up at least 167 homes. After BOUTHILLETTE submitted an invoice to the city for a boardup, a lien was placed on the subject property for the amount of the invoice. As foreclosed properties were sold and the liens discharged, Central Falls would pay BOUTHILLETTE. This system allowed BOUTHILLETTE to make unreasonable profits amounting to hundreds of thousands of dollars. When city employees raised concerns to MOREAU about the amounts being charged by BOUTHILLETTE to board up homes, MOREAU spurned and dismissed those concerns, telling an employee on one occasion to "mind his own [expletive] business." Further, once a lien was discharged, MOREAU would chastise city employees if BOUTHILLETTE was not immediately paid.

    6. As a reward to MOREAU for providing the Central Falls boardup work, BOUTHILLETTE on three occasions corruptly gave

MOREAU things of value. MOREAU corruptly accepted each of these gratuities intending to be rewarded for giving BOUTHILLETTE the work.

7. In March of 2009, BOUTHILLETTE assisted MOREAU in obtaining a furnace for MOREAU's Central Falls residence. BOUTHILLETTE contributed at least a portion of the purchase price of the furnace.

8. From March to November of 2009, BOUTHILLETTE provided numerous renovations and repairs to a Lincoln residence owned by MOREAU. MOREAU has never paid BOUTHILLETTE for that work.

9. In April of 2010, BOUTHILLETTE provided flood remediation work at MOREAU's Lincoln home. MOREAU has never paid BOUTHILLETTE for that work.

**COUNT 1**
18 U.S.C. §§ 666(a)(1)(B)
(Federal Program Fraud)

10. The allegations set forth in paragraphs 1 through 9 of this Information are realleged and incorporated by reference as if fully set forth herein.

11. From in or about March 2009 to in about April 2010, in the District of Rhode Island, Defendant,

CHARLES D. MOREAU,

being an agent of a local government, to wit: the City of Central Falls, Rhode Island, which local government received in

excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, did knowingly and corruptly, solicit, demand, accept, and agree to accept something of value, that is, a furnace, home renovations, and flood remediation services from Michael G. Bouthillette, intending to be rewarded in connection with a transaction and series of transactions of the City of Central Falls involving $5,000 or more, that is, work boarding up vacant buildings.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

### Count 2
18 U.S.C. §§ 666(a)(2)
(Federal Program Fraud)

12. The allegations set forth in paragraphs 1 through 9 of this Information are realleged and incorporated by reference as if fully set forth herein.

13. From in or about March 2009 to in about January 2010, in the District of Rhode Island, Defendant,

MICHAEL G. BOUTHILLETTE

did knowingly, intentionally and corruptly give, offer and agree to give things of value, that is, a furnace, home renovations, and flood remediation services to an agent of a local government, to wit: The City of Central Falls, Rhode Island, which local government received benefits in excess of $10,000

under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, with the intent to reward that agent in connection with business and a series of transactions of the City involving $5,000 or more, that is, work boarding up vacant buildings.

All in violation of 18 U.S.C. §§ 666(a)(2) and 2.

PETER F. NERONHA
UNITED STATES ATTORNEY

_____
TERRENCE P. DONNELLY
Assistant U.S. Attorney

_____
J. PATRICK YOUNGS
Special Assistant U.S. Attorney

_____
ADI GOLDSTEIN
Assistant U.S. Attorney
Deputy Criminal Chief